CLINTON TRUST COMPANY, A BANKING CORPORATION, PROSECUTOR, v. STATE BOARD OF TAX APPEALS OF THE STATE OF NEW JERSEY ET AL., RESPONDENTS.

Submitted October 6, 1939—Decided February 29, 1940.

Before Justices TRENCHARD, CASE and HEHER.

For the prosecutor, *Fred A. Lorentz.*

For the respondents, *Arthur T. Vanderbilt.*

The opinion of the court was delivered by

CASE, J.  The writ of *certiorari* brings up a judgment of the State Board of Tax Appeals affirming an assessment of $2,367.44, levied for the year 1937, upon the capital stock of the Clinton Trust Company, a banking corporation incorporated under the laws of this state.

Following the widespread banking troubles of 1933, the Clinton Trust Company reorganized under chapter 116, *Pamph. L.* 1933, which provided in section 7 that "said reorganization plan may provide for the issuance of preferred stock to all of the depositors and other creditors of such * * * trust company * * * and may provide that each creditor and depositor must subscribe at least a certain percentage of his claim for said stock." The plan adopted by the Clinton Trust Company, according to the testimony given by its vice-president before the State Board of Tax Appeals, included these features:  "This fund (viz., the disputed item of $526,797.13) was twenty-five per cent. of the total amount that each depositor had at the time of the closing of the bank in 1933; that is March 4th, 1933, and there was fifty per cent. paid to the depositor in cash, twenty-five per cent. was set up in this capital and retirement fund of the bank, and twenty-five per cent. was set up as participation certificates in assets that were considered absolutely worthless and transferred to a liquidating company, and the liquidating company was operated by the bank at no expense." We understand this to mean that the bank depositors were paid fifty per centum of their deposits in cash, that participation certificates in various securities (considered worthless but nevertheless preserved by a holding company) were issued to the depositors to the extent of a further twenty-five per centum and that preferred stock B was issued for the remaining twenty-five per centum of the deposits; but that in view of all of the

circumstances, including the questionable worth of the participation certificates, the preferred stock was made redeemable at double its par value; so that while the company would, if it wished to retire the preferred stock, be obliged to pay twice par value for the same, yet, so far as we are informed, the company was under no obligation ever to redeem, and unless and until it should redeem it was obligated to pay preferred stock dividends on par value only. Par of the class B preferred stock was $25 per share, and the shares were, therefore, subject to redemption at $50 per share. The bank carried in its annual statement of liabilities an item of $526,979.13, representing the gross par value of that stock, and another item of identical amount, representing the additional moneys to make up the sum which would be necessary in order to take up the stock if that should ever be done.

The question is whether the bank property should, before the levying of the annual tax, have been subjected to a deduction for the second item of $526,979.13. The local taxing authorities refused to allow the deduction and were sustained therein by the County Tax Board and the State Board of Tax Appeals.

The tax is imposed upon the shares of common stock. *R. S.* 54:9-2 provides that "the shares of the common capital stock of banks * * * shall be assessed and taxed according to their true value, to be determined in accordance with the provisions of sections 54:9-4 and 54:9-9 of this title." Section 54:9-4 provides that "the value of each share of common stock of each bank shall be ascertained and determined by adding the amount of its capital, surplus and undivided profits and deducting therefrom * * * an amount equal to *the aggregate par value of all classes of the issued and outstanding preferred stock* of such bank * * * *it being the intention that the shares of preferred stock and the capital represented thereby shall not be assessed or taxed."* Section 54:9-9 relates to the duties of the County Tax Board and refers back to *R. S.* 54:9-4 for the determination of common stock value.

It is said by the respondent that in construing the statute resort may not be had to the final statutory clause quoted

*supra,* "it being the intention that the shares of preferred stock and the capital represented thereby shall not be assessed or taxed," for the asserted reason that the words "par value" have a clear and well defined meaning, and that it is only in cases of doubt. that the context may be used for elucidation. We think that the language to which we have referred is text rather than context. It is embodied in the same sentence with the words "aggregate par value," is separated therefrom by no punctuation of greater disjunctive power than a comma and carries, to our mind, the unmistakable direction that the statute shall not be so interpreted as to result in an assessment of tax upon the capital represented by the preferred stock. We thus have two legislative statements—the tax is upon the shares of common stock; it is not upon the preferred stock or the capital represented thereby.

But that intermediate determination does not control the decision of the issue. How the outcome might be affected by full proofs of the relative rights of the common and preferred stocks we do not know. But there is nothing before us to show that on a liquidation of the bank and its assets the preferred stock would be entitled to its redemptive as against its par value; and if the preferred stock should not be so entitled then the common stock would receive all distributive moneys beyond the par value of the preferred. A form of preferred stock certificate appears to have been put in evidence below, but it is not in the printed record. The plan of reorganization, as placed before us, is little more than an outline without detail.

As we have said, we are informed of no scheme of mandatory redemption. Whether or not, however considerable the assets, there would ever be a redemption of the preferred stock appears to rest entirely within the discretion of the bank directors. The setting up, as an item of liability, of the figure which, if redemption should be effected, would be needed beyond the par value in order to redeem gives no promise that the money will ever be applied to redemption or that it will not be applied to other uses. Meanwhile, as we assume, it is earning an increment which, beyond other needs and the requirements for dividends on the par value of the

preferred stock, is, or may be, available for the declaring of dividends on the common stock. In the absence of any showing that under the terms of the reorganization the preferred stock must be redeemed or that a reserve must be set up and maintained inviolate to meet redemption requirements, we perceive no reason why the capital represented by the preferred stock should be placed at more than the par of that stock. Lacking contradictory testimony, the presumption is that the assessment was correctly made. *Central Railroad Co.* v. *State Tax Department,* 112 *N. J. L.* 5.

The judgment of the State Board of Tax Appeals will be affirmed, with costs.