A writ of certiorari was allowed by the former Supreme Court to review a judgment of the Division of Tax Appeals of the Department of Taxation and Finance affirming the assessment of $689,705.14 levied for the *Page 288 
year 1946 on the shares of capital stock of the National Bank of New Jersey.
In 1934, following the national bank holiday, the bank was recapitalized. Its articles of association were amended to provide for 50,000 shares of preferred stock "A", each share having a par and retireable value of $15, and 10,000 shares of preferred stock "B", each share having a par and retireable value of $50, and these shares were issued. All the preferred stock "A" was purchased by the Reconstruction Finance Corporation at its par and retireable value of $15 per share, and all the preferred stock "B" was purchased by the directors of the bank. The result was that $1,250,000 was paid into the capital of the bank for the purchase of these preferred shares, and this additional capital was reflected immediately in the statement of the bank's condition by including "par value preferred `A' stock $750,000, par value preferred `B' stock $500,000."
In 1937 bank examiners from the office of the Comptroller of the Currency insisted that the bank charge off its books certain assets of the bank which had resulted in losses. The capital structure of the bank at that time was such that a charge-off of these assets would have resulted in a serious impairment of the stated capital. The Reconstruction Finance Corporation consented to a one-half reduction of the par value of the bank's preferred stock, provided that the questionable assets were charged off the books of the bank and that the dividend and liquidation or dissolution preferences of the preferred stock remained unchanged. Accordingly, the articles of association of the bank were amended on January 12, 1937, to reduce the par value of the preferred "A" stock from $15 a share to $7.50 a share, and to reduce the par value of the preferred "B" stock from $50 a share to $25 a share. In all other respects the provisions of the 1934 amendments to the articles of association relating to the preferred stock remained unchanged. As a result, the aggregate retireable value of both classes of preferred stock became equal to double the aggregate par value thereof as shown in the amended articles and as shown on the books of the bank. Between August 1937 and December *Page 289 
31, 1945, the bank retired preferred stock to the extent that on December 31, 1945, the outstanding aggregate par value of preferred stock "A" amounted to $150,000 and of preferred stock "B" to $168,750. In all cases the preferred stock of both classes was retired at its retireable value, namely, double its par value.
As of January 1, 1946, the bank carried on its books, under liabilities, the following:
Capital
 Par value preferred stock "A" $150,000.00
 Par value preferred stock "B" 168,750.00
 Par value common stock ...... 550,000.00
Surplus ........................ 350,000.00
Undivided profits .............. 142,595.14
 _____________
 Total .............. $1,361,345.14

And in the return filed by the bank pursuant to R.S. 54:9-5, the same setup for capital, surplus and undivided profits was shown. No item was carried on the books of the company under liabilities representing the difference between the par value of the preferred stock and its retireable value, nor was any retirement fund or reserve for the redemption of all or any part of the preferred stock shown on the books of the bank or on the statement required by the statute.
The County Board and the Division of Tax Appeals, in determining the tax to be imposed on shares of the common stock of the bank, deducted the aggregate par value of the preferred stock of the bank as shown on its books, from the amount of the bank's capital, surplus and undivided profits, in ascertaining the true value of its common stock. The bank contends that the retireable value of the preferred stock, which is double the par value, should have been deducted, rather that the par value, in determining the true value of the common stock under R.S.
54:9-4, for the purpose of assessing the bank stock tax for the year 1946.
R.S. 54:9-2 provides: "The shares of the common capital stock of banks * * * shall be assessed and taxed according to their true value, to be determined in accordance with the provisions ofsections 54:9-4 and 54:9-9 of this title." *Page 290 
 R.S. 54:9-4 provides: "The value of each share of common stock of each bank shall be ascertained and determined by adding the amount of its capital, surplus and undivided profits and deducting therefrom * * * an amount equal to the aggregate paror retireable value of all classes of the issued and outstanding preferred stock of such bank * * * it being the intention that the shares of preferred stock and the capital represented thereby shall not be assessed or taxed; nor shallthere be assessed or taxed any stock issued to former unpaiddepositors of the bank while held to evidence their right torepayment under any plan of reopening or rehabitation approved bythe Commissioner of Banking and Insurance. * * *" (The only change made in R.S. 54:9-4 by the amendment, P.L. 1940, c.
69, was the addition of the italicized matter.)
R.S. 54:9-9 relates to the duties of the County Tax Board and refers back to R.S. 54:9-4 for the determination of common stock value.
The 1940 amendment of R.S. 54:9-4 followed the decision inClinton Trust Co. v. State Board of Tax Appeals, 124 N.J.L. 245 (Sup.Ct. 1940), aff'd 125 N.J.L. 275 (E. A.
1940). In the Clinton Trust case, the bank carried in its annual statement of liabilities an item of $526,979.13, representing the gross par value of certain preferred stock, and another item of identical amount, representing the additional moneys to make up the sum which would be necessary in order to take up the preferred stock. In that case the taxing authorities deducted the gross par value of the preferred stock as shown on the books of the bank, but refused to give any deduction for the additional item of $526,979.13 in its annual statement of liabilities, representing the additional moneys to make up the sum which would be necessary to retire the preferred stock at its retireable value, which was double the par value. The Clinton Trust contended that it was entitled to this further deduction of $526,979.13, but the judgment below was affirmed.
Since the decision in the Clinton Trust case, the only change made in the law applicable to this case is the addition to R.S.
54:9-4, by the 1940 amendment, of the italicized words in "deducting *Page 291 
therefrom an amount equal to the aggregate par or retireable
value of all classes of the issued and outstanding preferred stock of such bank." The deduction authorized by the 1940 amendment is stated in the alternative. It is obvious that the Legislature intended that in some cases the par value, and in other cases the retireable value, should be deducted, and equally obvious that the Legislature did not intend that in every case in which par value and retireable value differed, the retireable value should be deducted. When, then, should retireable value be deducted?
When we look to the old law, the mischief, and the remedy, we find the mischief to be the situation disclosed in the ClintonTrust case. Without an amendment specifically permitting the deduction of retireable value, a bank which carried on its books not only the par value of its preferred stock, but also an inviolate reserve to allow redemption at the retireable value, might be denied any deduction above the par value. We conclude, therefore, that the effect of the 1940 amendment to R.S. 54:9-4 is to permit a deduction for retireable value only when, in addition to the par value carried as a liability, there is also carried as a liability an inviolate reserve for the redemption of the whole or part of the preferred stock at its retireable value, and the deduction of retireable value cannot exceed the total of the stated par value of the preferred stock plus such reserve. Compare Clinton Trust Co. v. State Board of Tax Appeals, above. No reserve of any kind for the redemption of preferred stock was set up and carried by this bank, and therefore no deduction in excess of the gross par value may be made by virtue of the 1940 amendment to R.S. 54:9-4.
The bank argues that the proofs lacking in the Clinton Trust
case are before the court in this case; calling attention to the proofs concerning the liquidation and dissolution preference and the mandatory redemption scheme. Even if so, it entirely overlooks the fact that in the Clinton Trust case the bank had carried in its statement of liabilities not only the gross par value of its preferred stock, but also another liability in the identical amount, representing the additional moneys needed to make up the sum which would be necessary to retire the preferred *Page 292 
stock at its retireable value, twice its par value. In this case the bank carried on its books only the gross par value of its preferred stock. Therefore, this important proof which was before the court in the Clinton Trust case is lacking here.
The bank argues, further, that the capital invested in 1934 equaled $15 for each share of preferred "A" and $50 for each share of preferred "B" and therefore it is entitled for the 1946 tax year to a deduction of a similar amount for each outstanding share of preferred "A" and preferred "B". This claim is based upon the following language of R.S. 54:9-4: "It being the intention that the shares of preferred stock and the capital represented thereby shall not be assessed or taxed" and the construction of this language in the Clinton Trust case that it carries "the unmistakable direction that the statute shall not be so interpreted as to result in an assessment of tax upon the capital represented by the preferred stock." The bank admits it could not continue in business in 1937 unless the capital investment represented by the preferred stock should be reduced; that by amendment to its articles of association it was so reduced, and that each share of preferred "A" par value $15 and of preferred "B" par value $50 was exchanged for one share of new preferred stock "A" par value $7.50 and one share of preferred stock "B" par value $25, respectively. Yet, it claims that the "capital investment represented by the preferred stock," for the purpose of securing a reduction in tax, continued to be the higher amount contributed for the old but exchanged preferred stock, even though no reserve was carried on its books for redemption of the new preferred stock at the higher amount. Under the Federal statutes applicable to this bank, "If any part of the capital of a national bank * * * consists of preferred stock, the determination of whether or not the capital of such bank is impaired and the amount of such impairment shall be based upon the par value of its stock even though the amount which the holders of such preferred stock shall be entitled to receive in the event of retirement or liquidation shall be in excess of the par value of such preferred stock." (U.S.C.A. Tit. 12, Sec.
51b-1). The purpose of our laws distinguishing between capital and surplus would be subverted *Page 293 
if we allowed such a claim. As was said in Second National Bank,etc. v. State Board of Tax Appeals, 114 N.J.L. 573 (Sup.Ct.
1935), "No bank can value its assets for the purpose of carrying on business at one figure and then seek the reduction of taxes by substituting figures which, if submitted elsewhere, would result in the loss of its franchise."
The judgment under review is affirmed.